Filed 4/28/26  E.R. v. Superior Court CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| E.R.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>    Real Parties in Interest. | G066459<br><br>(Super. Ct. No. 20DP0617A, 20DP0618A)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge orders of the Superior Court of Orange County, Jennifer McCartney, Judge. Petition denied. Request for stay denied.

Orange County Parents Counsel and Fernando Acuna, Jr.; Leslie A. Barry for Defendant and Petitioner.

Leon J. Page, County Counsel, and Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Real Party in Interest.

Petitioner E.R. (Mother) seeks an extraordinary writ vacating the juvenile court's order setting a permanency planning hearing concerning her teenage daughters under Welfare and Institutions Code[1] section 366.26. We find no error and deny the petition.

## FACTS

At about 2 a.m. one morning in August 2024, Mother got into an altercation with her two daughters—P. (then age 14) and E. (then age 12). According to the detention report, Mother repeatedly hit P. and demanded that she hand over her cell phone. When E. tried to leave the room, Mother threw a manicure lamp at her. After calling the girls names like "bitch" and "demon," Mother kicked the girls out of the house and sent a text to the family chat that any family member who housed her children would be charged with kidnapping. The girls' aunt took them to the police department, where they were taken into protective custody.

The Orange County Social Services Agency filed a section 300 petition, citing Mother's physical abuse of the girls, her unresolved mental health and anger management issues, and her criminal history and history of domestic violence.[2] The girls were temporarily placed with their aunt. Following a contested detention hearing in August and an uncontested disposition hearing in November, the juvenile court sustained the petition, declared the girls dependents of the court, and removed them from parental custody.

---

[1] All further undesignated statutory references are to this code.

[2] The girls' younger brother is also a subject of the petition but is not a subject of this writ proceeding.

2

The family was provided with reunification services during the first and second review periods, and Mother made moderate progress with her case plan. She continued to engage in erratic and emotionally abusive behavior toward P., however, and on one occasion physically hit her.

At the 12-month review hearing, the juvenile court heard testimony from Mother, the girls, their younger brother, their aunts, Mother's therapist, and two Agency social workers, among others. Throughout those examinations, the court repeatedly asked its own questions.

E. testified she had a good relationship with Mother, who had learned how to become less angry, and she indicated she wants to return to Mother one day. P., by contrast, testified that she saw no change in Mother's behavior, Mother did not know how to regulate her emotions, P. did not think it was safe for E. to be in Mother's care, and she was afraid to testify about Mother's physical abuse because the "family is going to get really mad at me." At the conclusion of the hearing, the Agency asked the juvenile court to terminate reunification services as to both girls.

The juvenile court limited closing argument to two minutes per party. After considering the evidence, the court found E. and P. were credible and Mother had continued to engage in abusive behavior. Finding reasonable services had been provided and there was no substantial probability of return by the 18-month mark, the court terminated services and set a section .26 hearing for May 2026 to select and implement a permanent plan.

DISCUSSION

Mother petitioned this court for extraordinary writ review, asserting we should (1) order the juvenile court to vacate the order setting a section .26 hearing and (2) direct it to either (a) conduct a fair and impartial 12-month review or (b) order the Agency to provide Mother an additional six

3

months of reunification services. She contends the court erred as a matter of law because it employed judicial activism at the 12-month hearing and took on the role of a prosecutor rather than acting as an impartial judge.[3] In support, she claims the court asked witnesses questions designed to elicit unfavorable testimony and unfairly limited the parties' closing arguments to two minutes.

"In contested juvenile court proceedings, the due process clause of the Fourteenth Amendment requires that "'not only must there be actual fairness in the hearing but there must be the appearance of justice.'" [Citation.] '. . . [T]he parents are entitled to a fair hearing with an impartial arbiter, both in fact and in reality, and that means the provision of a referee who does not assume the functions of advocate.'" (*In re Emily D.* (2015) 234 Cal.App.4th 438, 445 (*Emily D.*).) Our "'role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial.'" (*In re M.V.* (2025) 109 Cal.App.5th 486, 517.)

Mother contends the juvenile court violated her right to a fair hearing by taking on the role of prosecutor and asking questions of the witnesses that were designed to elicit unfavorable testimony. We find no merit in this assertion. All of the cases cited by Mother[4] predate subsequent

---

[3] Mother does not attack the sufficiency of the evidence supporting the juvenile court's orders.

[4] See *In re Jesse G.* (2005) 128 Cal.App.4th 724; *In re Ruth H.* (1972) 26 Cal.App.3d 77 (*Ruth H.*); *Gloria M. v. Superior Court* (1971) 21 Cal.App.3d 525 (*Gloria M.*); *Lois R. v. Superior Court* (1971) 19 Cal.App.3d 895 (*Lois R.*).

case law recognizing that "[i]t is well within the province of the judge to ask a witness questions, particularly when the judge is the fact finder." (*In re S.C.* (2006) 138 Cal.App.4th 396, 423; see Evid. Code, § 775 [court may call and interrogate witnesses on its own motion]; *Emily D., supra,* 234 Cal.App.4th at p. 446 [juvenile court can question witnesses under Evid. Code § 775]; *Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 826 [noting *Ruth H., Gloria M.,* and *Lois R.* predate *People v. Carlucci* (1979) 23 Cal.3d 249, 255].)

""'[A] judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts. Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his [or her] office may be fairly and justly performed.'"" (*Emily D., supra,* 234 Cal.App.4th at p. 447.) Thus, ""'if a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him [or her] to ask proper questions for the purpose of developing all the facts in regard to them. Considerable latitude is allowed the judge in this respect as long as a fair trial is indicated [to both parties]. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge.'"" (*Id*. at pp. 446–447.)

We have reviewed the questions the judge asked in this case. Nothing in the record is inconsistent with the proper role of a juvenile court in contested dependency proceedings. Tellingly, Mother does not identify which of the court's queries establish a prosecutorial bent. And as the Agency

points out, some of the court's questions actually produced testimony favorable to Mother.

We also find no merit to Mother's argument that the juvenile court violated her due process rights by limiting closing argument to two minutes. "Trial courts have broad discretion to control the duration and scope of closing arguments." (*People v. Simon* (2016) 1 Cal.5th 98, 147.) In this case, the time limit was uniformly applied to all parties, and Mother does not identify any material argument she was foreclosed from making as a result of the limit.

## DISPOSITION

The writ petition is denied.


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.